IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS ROSS, JAMAL MOORE, | ) | |
| ROBERT SMITH and REGINA SMITH, | ) | |
| individually and on behalf of all others | ) | Civil Action No. 22-2632 (KSM) |
| similarly situated, | ) | |
| | ) | |
|   Plaintiffs, | ) | |
| | ) | |
|   v. | ) | |
| | ) | |
| CREDIT ACCEPTANCE CORPORATION, | ) | |
| | ) | |
|   Defendant. | ) | |
| ───────────────────────────── | ) | |

**BRIEF IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR REMAND**

NOW COME the Representative Plaintiffs, Dennis Ross, Jamal Moore, Robert Smith, and

Regina Smith, by and through their Attorney, who submit the following Brief in Support of

Plaintiffs' Motion for Remand, stating as follows:

## I. INTRODUCTION AND FACTS RELEVANT TO REMAND

Defendant, Credit Acceptance Corporation (CAC), is a Michigan corporation that provides

automobile financing to, among others, Pennsylvania consumers. Plaintiffs' Class Action

Complaint was filed in the Court of Common Pleas of Philadelphia County on June 3, 2022. The

Complaint relates to the repossession of consumers' motor vehicles in Pennsylvania and alleges

that CAC violated the Pennsylvania Uniform Commercial Code ("UCC") independently, as well

as the UCC in *pari materia* with the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA").

These claims concern two types of notices that must be sent after a vehicle is repossessed. The

first notice, referred to as a "Notification of Disposition" or "Notice of Repossession" (NOR)[1]

---

[1] See 13 Pa.C.S.A. §§ 9611, 9613, 9614; 12 Pa.C.S.A. §6254.

must be sent to the consumer immediately following a repossession of their motor vehicle and prior to the sale of same. The second notice, referred to as an "Explanations of Calculation of Surplus or Deficiency" or "Post-Sale Notices"[2] must be sent to the consumer following the sale of a repossessed vehicle. The UCC and MVSFA govern who is required to be sent such notices, the information that must be provided therein, and the time-frame and way they must be sent (i.e., certified or registered mail). These statutes contain requirements that must be strictly followed, as they provide the framework for a secured lender to take property (motor vehicles) without legal process.

CAC was served with the Complaint on June 7, 2022 and filed its Notice of Removal (attaching the Complaint) on July 6, 2022. Removal in this case was based on the Class Action Fairness Act (CAFA). (ECF 1; ECF 1-1). With respect to the $5,000,000 jurisdictional amount required under CAFA, *see* 28 U.S.C. §1332(d)(2), CAC's Notice of Removal stated, in pertinent part:

> 22. Although Credit Acceptance expressly denies that is has any liability to the named Plaintiffs or any putative classes, and expressly denies that any class could be properly certified under Federal Rule of Civil Procedure 23, it avers that the aggregate amount of relief sought by the alleged classes exceeds $5,000,000, exclusive of interest and costs. *Owens,* 574 U.S. at 84 ("When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." (citing 28 U.S.C. § 1446(c)(2)(A))).
>
> 23. On behalf of the Post-Sale Notice Class Plaintiffs, the Complaint seeks minimum statutory damages of $500 per claimant pursuant to 13 Pa.C.S. § 9625(e)(5). (Compl. ¶ 98.) **Credit Acceptance's business records indicate that more than 10,000 individuals received a Post-Sale Notice from Credit Acceptance in Pennsylvania since June of 2016**. Accordingly, the alleged statutory damages sought in the Complaint by the Post-Sale Notice Plaintiffs alone, in the aggregate, exceed $5,000,000 (10,001 individuals x $500 per alleged violation = $5,000,500).
>
> 24. On behalf of the Notice of Repossession Class Plaintiffs, the Complaint also alleges statutory damages of not less than the credit service charge plus 10% of the principal amount of the obligation pursuant to 13 Pa.C.S. § 9625(c)(2). (*Id.* ¶ 94.)

---

[2] See 13 Pa.C.S.A. § 9616; 12 Pa.C.S.A. § 6261(d).

25. Plaintiffs also seek declaratory, injunctive and equitable relief, asking, *inter alia*, the Court to enjoin collection of certain deficiency balances and refund monies paid by putative class members. (Compl. p. 27-28.) The amount in controversy includes the value of declaratory and injunctive relief to the putative class. *See Excel Pharmacy Services, LLC v. Liberty Mutual Insurance Co.*, 825 F App'x 65, 68 (3d. Cir. 2020). Any additional amounts ordered to be paid in this regard would further elevate the amount in controversy above the threshold CAFA requirement.

26. Taken together, these amounts exceed the [$5,000,000] jurisdictional minimum.

(ECF 1, ¶22-26); Emphasis added.

## II. LAW AND ARGUMENT

The party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court. *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007); *Samuel–Bassett v. KIA Motors America, Inc.,* 357 F.3d 392, 396 (3d Cir.2004). When a complaint does not state the amount in controversy, a Notice of Removal is only required to make a plausible assertion that the amount in controversy exceeds the jurisdictional threshold. However, if the plaintiff contests (or the Court questions) the amount in controversy asserted by the removing defendant, the defendant must put in evidence and bears the burden of proving – by a preponderance of the evidence – that the amount-in-controversy requirement (a subject matter jurisdictional requirement) is met. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88-89, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014); *Samuel-Bassett,* 357 F.3d at 397-398 (3d Cir. 2004); See also, *Andrews v. Nike, Inc.*, No. CV 21-2793, 2021 WL 5042460, at *1-2 (E.D. Pa. 2021); *Sciarrino v. State Farm Fire & Cas. Co.*, 476 F. Supp. 3d 91, 95 (E.D. Pa. 2020). A defendant must justify its jurisdictional assertions based on some objective, factual basis. See, e.g., *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 507 (3d Cir. 2014); *Samuel-Bassett,* 357 F.3d at 403.

As noted above, CAC's Notice of Removal includes five paragraphs relating to the CAFA jurisdictional amount, paragraphs 22-26. (See ECF 1, ¶22-26). Paragraph 22 of CAC's Notice of Removal simply states that "the aggregate amount of relief sought by the alleged classes exceeds $5,000,000, exclusive of interest and costs." (ECF 1, ¶22). Paragraph 24 of CAC's Notice of Removal addresses statutory damages for Plaintiffs' claimed Notice of Repossession violations, but simply states that "the Complaint also alleges statutory damages of not less than the credit service charge plus 10% of the principal amount of the obligation pursuant to 13 Pa.C.S. § 9625(c)(2)" without any detail or even any attempt to assert what this amount might actually be in the aggregate. (ECF 1, ¶24). Paragraph 25 of CAC's Notice of Removal notes that Plaintiffs Complaint seeks declaratory, injunctive and equitable relief to enjoin collection of deficiency balances and refund payments made towards same and that the amount in controversy includes the value of this relief, but also provides no detail and makes no attempt to assert what this amount might actually be in the aggregate. (ECF 1, ¶25). These three paragraphs are mere conclusory assertions that CAFA jurisdiction is satisfied. They fail on their face to establish plausible allegations based on objective facts showing, by a preponderance of the evidence, that the CAFA jurisdictional requirement is satisfied.

The only attempt CAC makes to state a plausible allegation based on objective facts that the CAFA jurisdictional requirement is satisfied can be found in Paragraph 23 of CAC's Notice of Removal. This paragraph (merely) states that more than 10,000 individuals were sent a post-sale notice by CAC and that these individuals in the Post-Sale Notice class would be entitled to $500 in statutory damages for the post-sale notice violations alone, which satisfied CAFA. (See ECF 1, ¶22). Plaintiffs proposed "Notice of Repossession Class," was defined as all persons (including co-borrowers):

(a) Who **entered into a retail installment sales contract** ("RISC") **in Pennsylvania**, for the purchase of a Motor Vehicle, **which contained an FTC Holder Rule Notice** and/or a **reference in the RISC that the Motor Vehicle was purchased for personal, family, household, or consumer use**, which was **assigned to CAC**;

(b) From whom CAC, as secured party, repossessed or caused the Motor Vehicle to be **repossessed in Pennsylvania**; **and**,

(c) To whom CAC **sent a Notice of Repossession to a Pennsylvania address** at any time on or between **six years prior to the filing of this complaint** through the date of class certification, **which**:

    i.   was substantively similar to <u>Exhibit A1-A4</u> [attached to the Complaint – which are forms that, *inter alia,* **contain only a single line item for expenses in the form of a standardized/default $300 amount in "Repossession Expenses", which Plaintiffs allege was not the amount incurred by CAC** when the NOR's were sent]; and/or,

    ii.  **did not state** whether the Motor Vehicle would be sold at a **public or private sale**; and/or,

    iii. **did not state** the **time and place** of a public sale; and/or,

    iv. **did not state** that the Borrower is **entitled to an accounting** of the unpaid indebtedness **and the charge, if any**, for such an accounting, and/or,

(d) who were not sent a separate, separately addressed Notice of Repossession, and/or,

(e) who were not sent a Notice of Repossession [at all].

See ECF 1-1, p. 19-20 Emphasis added. In order to be a member of the Post-Sale Class, the individual must first also be a member of the proposed Notice of Repossession Class. Specifically, Plaintiffs proposed a "Post-Sale Notice Class" defined as all persons:

(a) **Who are in the Notice of Repossession Class**; and,

(b) Whose repossessed Motor Vehicle was sold by CAC or at the direction of CAC **within six years prior to the filing of the Complaint** in this action; and,

(c) **Who were sent a Post-Sale Notice** by CAC **but it was not sent by registered or certified mail or were not personally delivered**; or,

    i.   Who were not sent a separate, separately addressed Post-Sale Notice; or,

    ii.  Who were not sent a Post-Sale Notice.

*Id.* Based on the current record, neither Plaintiffs nor this Court can determine who among these individuals are actually class members based on the complete definition of the class, as defined in Plaintiffs' Complaint. See, *Caufield v. EMC Mortg. Corp.*, 803 F. Supp. 2d 519, 527–28 (S.D.W. Va. 2011)(Merely multiplying the number of West Virginia loans that the defendant has serviced

by the amount the named plaintiff may recover cannot constitute a sufficient basis for removal jurisdiction under CAFA. EMC's calculations are not incorrect; if every loan that EMC identified was in default, and was serviced in the same manner alleged by the plaintiff, it is certainly possible, or even probable that EMC could meet the amount in controversy requirement in statutory penalties alone…[but] [t]he mere possibility that the plaintiff and proposed class *could* meet that requirement is not enough to give this court jurisdiction.); *Lanham v. Nationstar Mortg., LLC*, 169 F. Supp. 3d 658, 662 (S.D.W. Va. 2016)("Even Defendant's 'conservative estimate' of the amount in controversy based on twenty-five percent of all West Virginia loans having at least one violation is pure conjecture. While it is possible that twenty-five percent of West Virginia borrowers with loans serviced by Nationstar were charged illegal late fees as alleged in the Complaint, it is equally possible that Defendant's allegedly illegal conduct was far less rampant. Defendant bears the burden of showing by a preponderance on the evidence, beyond mere speculation, that CAFA's amount in controversy requirement is actually met."); *Melendez v. J&B Investments, Inc.*, 2018 WL 3769827, at *3 (C.D. Cal. 2018) (Defendants' use of all hourly, non-exempt employees – rather than only those who worked as truck drivers, stockers, or yard workers – prevents the Court from adopting their calculations. By including employees who are not putative class members, Defendants calculated the amount in controversy using a broader class definition than the one Plaintiff asserts. In so doing, Defendants likely inflated the amount in controversy. Thus, "[t]he uncertainty regarding the number of putative class members affects the entirety of the amount in controversy calculations."); *Leff v. Belfor USA Grp., Inc.*, 2015 WL 3486883, at *4 (D.N.J., 2015)(granting remand and noting that defendants' assertion that the amount in controversy had been met based on a "general search of its records" lacked any factual basis); *Miller v. A-1 Express Delivery Servs., Inc.*, 2017 WL 462406, at *5 (N.D. Cal., 2017) (remanding a case due to the

defendant's failure to establish the amount in controversy where the defendant "based its amount in controversy calculations on an incorrect interpretation of the class definition"). This renders Paragraph 26 of CAC's Notice of Removal – concluding that the "amounts" alleged in paragraphs 22-25 "taken together" satisfy CAFA's jurisdictional requirement – defective as well.

### III.   RELIEF REQUESTED

For the foregoing reasons, Plaintiffs request that this Court grant Plaintiffs' Motion for Remand and enter an Order remanding this Case back to the Court of Common Pleas of Philadelphia County.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.
*/s/ Richard Shenkan*
Richard Shenkan
*Attorney for Plaintiffs*

### CERTIFICATE OF SERVICE

I certify that a copy of this Brief has been sent to all counsel of record by ECF and e-mail.

SHENKAN INJURY LAWYERS, LLC.
*/s/ Richard Shenkan*
Richard Shenkan